**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4299**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

MARY ELLEN DOWDELL,

        Defendant - Appellant.

**No. 08-4300**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

MARK SMYTH,

        Defendant - Appellant.

**No. 08-4308**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

GREGORY SMYTH,

        Defendant - Appellant.

Appeals from the United States District Court for the Western District of Virginia, at Charlottesville.  Norman K. Moon, District Judge.  (3:07-cr-00010-nkm-6;  3:07-cr-00010-nkm-8; 3:07-cr-00010-nkm-9)

Submitted:  November 24, 2008          Decided:  January 5, 2009

Before GREGORY, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

David A. Eustis, EUSTIS & GRAHAM, PC, Charlottesville, Virginia; B. Stephanie Commander, Charlottesville, Virginia; David L. Heilberg, Charlottesville, Virginia, for Appellants.  Julia C. Dudley, United States Attorney, Jean B. Hudson, Assistant United States Attorney, Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In early 1998, Terry Dowdell started operating a Ponzi scheme through his company, Vavasseur Corporation. Federal investigations of the scheme ensued and on November 19, 2001, Dowdell's assets were frozen through a temporary restraining order which was later extended through a series of orders culminating in a permanent injunction. Terry Dowdell eventually pled guilty to securities and wire fraud charges.

In April 2007, a federal grand jury charged two brothers, Mark and Gregory Smyth, and Terry's wife, Mary Ellen Dowdell, in Count Three of a multi-count, multi-defendant superseding indictment with conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343, 2 (2006). Specifically, the indictment charged that over $800,000 in funds subject to the orders freezing Terry Dowdell's assets were wired to the Smyth brothers and that Mary Dowdell received and negotiated checks drawn on the accounts into which these funds were transferred and that she otherwise benefited from the funds when they were used to make payments on a credit card account she held with her husband.

The Smyth brothers each pled guilty to aiding and abetting to commit wire fraud. A jury convicted Mary Dowdell of conspiracy to commit wire fraud. The district court sentenced Gregory Smyth to thirty-seven months' imprisonment, Mark Smyth

3

to forty-four months' imprisonment, and Dowdell to sixty months' imprisonment. Gregory and Mark Smyth appeal from their sentences. Mary Dowdell appeals from her conviction and sentence. The appeals have been consolidated.

We first address Dowdell's challenge to her conviction. Dowdell argues that the district court erred by denying her Fed. R. Crim. P. 29 motion for judgment of acquittal because there was scant evidence that she specifically received and negotiated the series of checks made payable to her from the Smyths or that she had any involvement in the payments made on the credit card.

We review de novo the district court's denial of Dowdell's Rule 29 motion. United States v. Reid, 523 F.3d 310, 317 (4th Cir. 2008). Where, as here, the motion was based on a claim of insufficient evidence, "[t]he verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942); Reid, 523 F.3d at 317. To prove conspiracy to commit wire fraud, the Government need only establish that the defendant knowingly and voluntarily agreed to participate in a scheme to defraud and that the use of the interstate wires in furtherance of the scheme was reasonably foreseeable. United States v. Hasson, 333 F.3d 1264, 1270 (11th Cir. 2003).

Viewing the evidence in the light most favorable to the Government, there was substantial evidence that Dowdell knowingly and voluntarily agreed to participate in a scheme to defraud and that the use of the interstate wires in furtherance of the scheme was reasonably foreseeable. The Government presented evidence that the assets of Dowdell's husband, Terry, and his alter-ego, Vavasseur Corporation, were frozen continuously from November 19, 2001. Dowdell herself was named as a relief defendant in the order and received a copy of the order the day it issued. The Government also introduced evidence of the various transfers of Vavasseur funds from the Smyth brothers to Mary personally, to her company, Willowood, and to the credit card account held by the Dowdells and evidence of Mary's personal involvement in cashing checks issued by the Smyths. Viewing this and the other trial evidence of transfers of funds to Mary's benefit from the time that the asset freeze went into effect, we find that the evidence was sufficient to support Mary's conviction for conspiracy to commit wire fraud.

Turning to the sentencing issues, we review a sentence imposed by the district court for reasonableness. United States v. Booker, 543 U.S. 220, 260-61 (2005). In sentencing a defendant post-Booker, a district court must correctly calculate the appropriate advisory guidelines range. Gall v. United

5

States, 128 S. Ct. 586, 596 (2007) (citing Rita v. United States, 127 S. Ct. 2456, 2465 (2007)). The court then must consider that range in conjunction with the 18 U.S.C. § 3553(a) (2006) factors. Gall, 128 S. Ct. at 596. In imposing a sentence, the court "may not presume that the guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented." Id. at 596-97. The district court also "must adequately explain the chosen sentence to allow for meaningful appellate review." Id. at 597.

Appellate review of a district court's imposition of a sentence (whether inside or outside of the guidelines range) is for abuse of discretion. Id.; see also United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007). The appellate court

> must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence--including an explanation for any deviation from the Guidelines range. Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.

Gall, 128 S. Ct. at 597.

6

Turning first to Dowdell's sentence, the district court determined that her base offense level was six, under U.S. Sentencing Guidelines Manual § 2B1.1(a)(2) (2007). She received a fourteen-level increase under USSG § 2B1.1(b)(1)(H) because the offense involved a loss amount of more than $400,000 and less than $1 million. Because the offense involved the violation of a court order, Dowdell's offense level was raised an additional two levels pursuant to USSG § 2B1.1(b)(8)(C). The offense level was raised two more levels under USSG § 2B1.1(b)(9)(B) because a substantial part of the scheme was committed outside of the United States. Finally, the district court applied a two-level increase in offense level under USSG § 3C1.1 for obstruction of justice because the court found that Dowdell committed perjury when she testified at trial. Dowdell had no criminal history points. With a total offense level of twenty-four and criminal history category I, Dowdell's guideline range was sixty-three to seventy-eight months' imprisonment. USSG ch. 5, pt. A (sentencing table). However, because the then-applicable statutory maximum sentence of five years under § 1343[*] was less than the guideline range, the statutory maximum became the guideline range. See USSG § 5G1.1.

---

[*] The statutory maximum for § 1343 offenses has since been raised to twenty years. See 18 U.S.C.A. § 1343 (West Supp. 2008).

7

Dowdell challenges her sentence on several grounds. First, she contends that the district court erred by imposing the obstruction of justice enhancement. A sentencing court must impose a two-level adjustment under § 3C1.1 if the defendant willfully obstructed or impeded the administration of justice during the investigation, prosecution, or sentencing of the offense of conviction. In the case of perjury, the obstruction of justice increase applies if the court finds that the defendant gave false testimony under oath "concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory. United States v. Dunnigan, 507 U.S. 87, 94 (1993); USSG § 3C1.1 cmt. n.4(b). In the face of substantial evidence of her guilt, Dowdell took the stand and flatly denied any wrongdoing. We find no clear error in the § 3C1.1 enhancement.

Dowdell also challenges the inclusion of a $512,000 check she co-signed in determining the loss attributable to her for relevant conduct, contending that this transfer was not related to the conspiracy. Under USSG § 1B1.3(a), unless otherwise specified, relevant conduct shall be determined based on (1) "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," and (2) "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or

8

enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy) all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." USSG § 1B1.3(a). Uncharged crimes may be considered "relevant conduct" for sentencing purposes, as can charges that were dismissed or for which the defendant was acquitted. United States v. Watts, 519 U.S. 148, 155-56 (1997).

The evidence presented at trial supported a finding that the transfer of the $512,000 was related to the conspiracy. The day after her husband's assets were frozen, Dowdell facilitated the transfer of $512,000 from an account over which Terry had signatory authority into an account over which he had no such authority. Although this particular transaction was not charged in the indictment and did not itself include a wire transfer, it reflects the general conspiracy charged in the indictment to move funds in accounts covered by the asset freeze into other accounts where the Dowdell family and others could benefit from them. We therefore conclude that the district court did not err by including the $512,000 in the loss calculation.

Finally, Dowdell argues that the district court failed to adequately consider the § 3553(a) factors. A district court's explanation for the sentence it imposes must be sufficient to

enable the appellate court to effectively review its reasonableness, but need not mechanically discuss all the factors listed in § 3553(a). United States v. Montes-Pineda, 445 F.3d 375, 380 (4th Cir. 2006). The court's explanation should indicate that it considered the § 3553(a) factors and the arguments raised by the parties. Id. This court does not evaluate the adequacy of the district court's explanation "in a vacuum," but also considers "[t]he context surrounding a district court's explanation." Id. at 381.

The district court correctly calculated Dowdell's guideline range, treated the guidelines as advisory, and considered the § 3553(a) factors. The court sentenced her to the statutory maximum, which was her guideline range. We find that Dowdell presented no information to rebut the presumption that her within-guideline sentence is reasonable.

The guideline calculations for the Smyth brothers were identical. The base offense level was six, under U.S. Sentencing Guidelines Manual § 2B1.1(a)(2) (2007). This offense level was increased by fourteen levels, pursuant to USSG § 2B1.1(b)(1)(H) because the offense involved more than $400,000, but less than $1 million. Because the offense involved the violation of a court order, the offense level was raised an additional two levels pursuant to USSG § 2B1.1(b)(8)(C). The offense level was raised an additional

10

two levels under USSG § 3C1.1 for obstruction of justice for providing a false and misleading accounting of $500,000 the brothers received from Terry Dowdell and Vavasseur. The brothers also received a two-level downward adjustment in offense level pursuant to USSG § 3E1.1(a) for acceptance of responsibility.

Neither brother had any criminal history points. With a total offense level of twenty-two and criminal history category I, each brother's guideline range was forty-one to fifty-one months' imprisonment.

In Gregory Smyth's case, the Government asked the court to consider that he pled guilty and convinced his brother to plead guilty, saving the Government and the court time from preparing for Mark Smyth's trial. Stating that it had considered the § 3553(a) factors and the advisory guidelines, the court sentenced Gregory Smyth to thirty-seven months in prison, four months below the bottom of the guideline range.

Mark Smyth contended that it was he who convinced his brother to plead guilty. After considering the § 3553(a) factors and the advisory guidelines, the court initially planned to sentence Mark Smyth to fifty-one months in prison, the top of the guideline range. However, Mark Smyth asserted that it was he who convinced his brother to plead guilty and to avoid a gross disparity in sentences, the court ultimately sentenced

11

Mark Smyth to forty-four months in prison, a sentence in the middle of his guideline range.

On appeal, the Smyths argue that the district court erred by applying USSG § 3C1.1 to increase their offense levels for obstruction of justice. This enhancement was based on the brothers' false accounting of the $500,000 they received from Vavasseur that they presented to Terry Dowdell.

When they prepared the accounting, the Smyths were well aware that Terry Dowdell was the lead defendant in a pending civil action filed by the SEC in federal court involving the mishandling of funds. They knew that, in response to Terry Dowdell's admissions that Vavasseur was a Ponzi scheme, the court issued an order shutting down the company and freezing Terry Dowdell's assets. They also knew that the SEC was interested in the $500,000 that the Smyths received. They sent Dowdell a false accounting of the funds, knowing that this information was going to "the lawyers."

The relevant guideline commentary to USSG § 3C1.1 lists "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding" as a ground for the obstruction adjustment. USSG § 3C1.1 cmt. n.4(c). The brothers claim that the enhancement should not apply because they did not provide the false accounting to any court, law enforcement officer, or

any other government official or entity, but rather to Terry Dowdell and his attorney.

Even though the brothers sent the false information to private individuals, they knew that it would be used in connection with a federal court case. A preponderance of the evidence supported the district court's conclusion that the purpose of the letter was to obstruct justice by deceiving the SEC about these funds. Accordingly, we find that the district court properly applied the § 3C1.1 enhancement to each of the Smyths.

Finally, like Mary Dowdell, the Smyths argue that the district court failed to adequately address the § 3553(a) factors. We find that district court correctly calculated the Smyth brothers' respective guideline ranges, treated the guidelines as advisory, and considered the § 3553(a) factors. We find that Mark Smyth failed to rebut the presumption that his within-guideline sentence is reasonable. We further find Gregory Smyth's below-guideline sentence to be reasonable.

For these reasons, we affirm Mary Dowdell's conviction and sentence and affirm Gregory and Mark Smyth's sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

13